UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES FUCHS,

    Plaintiff,

v.   Case No. 8:20-cv-799-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1980, has some high school education, and has past relevant work experience as a carpenter's helper, restaurant cook, contracting specialist, salesclerk, and food tester. (R. 23, 116). The Plaintiff applied for DIB and SSI in March 2016, alleging disability as of October 2015, due to epilepsy, anxiety,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

1

depression, memory loss, and other related maladies. (R. 136–37, 162–63). The Social Security Administration denied the Plaintiff's applications both initially and on reconsideration. (R. 11).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in October 2018. (R. 88–122, 212). The Plaintiff was represented by counsel at that hearing and testified on his own behalf. (R. 88–114). A vocational expert (VE) also testified.[2] (R. 115-122).

In April 2019, the ALJ issued a decision in which she found that the Plaintiff: (1) met the insured status requirements through the end of December 2019, and had not engaged in substantial gainful activity since his alleged onset date in October 2015; (2) had the severe impairment of epilepsy; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to engage in a full range of work at all exertional levels subject to certain nonexertional limitations; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 11–24). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 24).

The Appeals Council denied the Plaintiff's request for review. (R. 1–3). Accordingly, the ALJ's decision became the final decision of the Commissioner.

---

[2] "A [VE] is an expert on the kinds of jobs an individual can perform based on [the claimant's] capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.

2005)). "[W]hile the court [accords] deference to the [Commissioner's] factual findings, no such deference is given to [her] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

### III.

The Plaintiff's sole challenge on appeal is that the ALJ's decision is not supported by substantial evidence because the ALJ's RFC determination did not account for limitations caused by the Plaintiff's epilepsy. (Doc. 21 at 6–8). The Commissioner counters that the ALJ properly applied the governing law and that her decision is adequately buttressed by the evidence of record. *Id.* at 8–12. For the reasons set forth below, the Plaintiff's challenge is without merit.

As noted above, at step four of the sequential evaluation process, the ALJ must assess the claimant's RFC, as well as his ability to perform his past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. In making this determination, an ALJ must decide based upon all the relevant evidence what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.*

At step five, the ALJ must then consider the claimant's RFC in combination with his age, education, and work experience and assess whether he can make an adjustment to other work. *Phillips*, 357 F.3d at 1239. If the claimant can make such an adjustment, a finding of no disability is warranted. *Id.*

Here, the ALJ found at step four that the Plaintiff had the RFC to engage in a full range of work at all exertional levels but was restricted to, among other things, simple and routine tasks. (R. 17–22). At step five, the ALJ determined that the Plaintiff had the RFC to engage in unskilled work but recognized that the Plaintiff's non-exertional limitations could "erode the occupational base of unskilled work at all exertional levels" available to him. (R. 22–23). As a result, the ALJ inquired of the VE regarding the extent to which such restrictions precluded the Plaintiff from performing other jobs that exist in the national economy in light of the Plaintiff's age, education, work experience, and RFC. (R. 23). The VE responded that, given all the factors, as well as VE's experience with seizure disorders, the Plaintiff would be able to engage in unskilled jobs with an SVP[5] of two, such as patient transporter, hand packager, and marker. *Id*. Based on this testimony, the ALJ found that the Plaintiff was not disabled. *Id*.

The Plaintiff now argues that the ALJ's disability assessment is fatally flawed because the ALJ's step four and step five findings did not include limitations for the Plaintiff's deficits in processing speed, pace, or memory stemming from his epilepsy, and also did not include limitations addressing any time off from work he required

---

[5] SVP stands for "specific vocational preparation" and is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dept. of Labor, Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, 1991 WL 688702 (G.P.O. 4th ed. 1991). An SVP of 2 requires training of "[a]nything beyond [a] short demonstration up to and including [one] month." *Id.*

during and after an epileptic seizure. (Doc. 21 at 8). This argument does not survive scrutiny.

As an initial matter, the Plaintiff's fails to describe with any specificity the work-related impairments that allegedly attend his epilepsy. Although he summarizes some portions of the record relating to these issues—namely, certain opinion evidence, his own testimony, and various treatment notes describing his history of seizures—he does not meaningfully argue or present facts demonstrating how his reduced abilities resulted in functional restrictions not included in the ALJ's RFC determination. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 877–78 (11th Cir. 2012) (noting that a claimant bears the burden of showing "the effect of [an] impairment on [his] ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1546–47 (11th Cir. 1986)). A claimant cannot establish that an ALJ has committed reversible error simply by arguing the ALJ neglected to consider limitations caused by the claimant's afflictions when the claimant himself does not explain how those afflictions inhibit his ability to engage in basic work activities. *Smith*, 501 F. App'x at 877–78.

Irrespective of this deficiency, it is evident from the ALJ's decision that she properly considered the Plaintiff's restrictions pertaining to his processing speed, memory issues, and time off task in arriving at her RFC findings and that those RFC findings are supported by substantial evidence. In connection with record evidence that the Plaintiff suffered from certain mental impairments, the ALJ determined at step two that the Plaintiff had only mild limitations in the functional areas of

"understanding, remembering, or applying information," as well as in "concentration, persistence, and pace."[6] (R. 16–17). The phrase "concentration, persistence, and pace" in this context refers to a claimant's "ability to sustain focused attention and concentration sufficiently long enough to permit him to timely and appropriately complete tasks that are commonly found in work settings." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(3)).

Similarly, at step four, the ALJ assigned great weight to the reports of two state agency consultants, both of whom also opined that the Plaintiff exhibited only mild limitations in maintaining concentration, persistence, and pace. (R. 21). And the ALJ thereafter incorporated her findings regarding the Plaintiff's mild impairments in these functional areas into her RFC determination by confining the Plaintiff to simple and routine tasks, which the ALJ equated to unskilled work. (R. 17, 23); 20 C.F.R. § 404.1568(a) (defining unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); *id.* at § 416.968(a) (same).

These findings by the ALJ—none of which the Plaintiff appears to contest—are important because the Eleventh Circuit has held (albeit in unpublished decisions) that

---

[6] Where, as here, a claimant is alleged to suffer from a mental impairment, an ALJ must employ a special technique in evaluating the claimant's degree of limitations in four functional areas, including the areas of "understanding, remembering, or applying information" and "concentration, persistence, and pace." *Jacobs*, 520 F. App'x at 950 (citations omitted). The ALJ is then required to incorporate the results of this analysis into her findings and conclusions. *Id.*

where a claimant suffers from *moderate* limitations in concentration, persistence and pace, an ALJ may account for those restrictions by confining the claimant to unskilled work. *See, e.g.*, *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's] functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace."); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712 (11th Cir. 2015) ("[T]he ALJ accounted for [the claimant's] moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform.").[7] Here, the ALJ arguably exceeded this standard by restricting the Plaintiff to unskilled work to account for his *mild* limitations in concentration, persistence and pace.

The ALJ also relied on sufficient evidence in her decision to buttress her RFC determination. By way of example, in addition to the above opinions of the two state agency consultants, the ALJ pointed to the Plaintiff's testimony that he could prepare meals, complete household chores, and handle money, as well as medical documentation in the record indicating that the Plaintiff's medication controlled his

---

[7] Instead of addressing this authority, the Plaintiff relies on *Silva v. Colvin*, 2015 WL 5023096 (D. R.I. Aug. 24, 2015), in which a district court found that the ALJ erred by not incorporating any limitations concerning the speed or pace despite including in the RFC the ability to perform simple, routine and repetitive tasks. *Id.* at *14. *Silva* is not binding on this Court and, in light of *Winschel* and its progeny, is not persuasive.

9

epilepsy. (R. 18–22). This record evidence adequately substantiates the ALJ's challenged conclusions, and the Plaintiff fails to show otherwise.

The Court is likewise unpersuaded by the Plaintiff's assertion that the ALJ did not sufficiently address the findings made by a neuropsychologist, Dr. Maya Ramirez, who examined the Plaintiff. Dr. Ramirez submitted a mental RFC in which she opined that the Plaintiff suffered from a memory impairment, among other issues. (R. 788–802). When asked, however, to identify the extent to which this impairment would cause the Plaintiff to miss work, Dr. Ramirez offered only that she did not believe it would allow the Plaintiff to maintain employment. (R. 792). Because "the determination of whether the claimant is unable to work is . . . reserved to the Commissioner," 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ assigned little weight to Dr. Ramirez's report at step four. (R. 21) (citing 20 C.F.R. § 404.1527(d)).[8] The ALJ also twice addressed Dr. Ramirez's findings at step two, including in connection with her assessment of the Plaintiff's ability to understand, remember, and apply information. (R. 15–16).

As this recitation makes clear, the ALJ properly considered Dr. Ramirez's report in its entirety, as well as the Plaintiff's medical condition as a whole. And, contrary to the Plaintiff's suggestion, the mere fact that the ALJ may not have incorporated all of Dr. Ramirez's findings into her RFC determination or otherwise

---

[8] The Plaintiff does not object to the weight the ALJ assigned to Dr. Ramirez's report and has therefore waived any such a challenge. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding that a plaintiff waived an issue "because he did not elaborate on [the] claim or provide citation to authority about [it]").

discussed those findings in her opinion does not serve as a basis for remand. As the Eleventh Circuit has explained, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); *see also Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (per curiam) (noting that an "ALJ is not required to specifically address every aspect of a [medical] opinion"). The ALJ has satisfied this standard here. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (finding that the ALJ adequately considered the claimant's processing speed score "by virtue of [the ALJ's] consideration of [a physician's] report [in which the score was contained] and the other evidence" in the medical record, even though the ALJ did not specifically mention the claimant's processing speed score in his decision).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of August 2021.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record